HENRY G. LEISENRING v. CHARLES H. LA CROIX.

FILED APRIL 30, 1903. No. 12,806.

1. **Malpractice:** EVIDENCE. In an action against a physician and surgeon for alleged negligent treatment of a compound fracture of the bone, it is permissible to show by another surgeon what would be the proper treatment for a simple fracture, and that the treatment for a compound fracture would not be materially different.

2. **Evidence:** DAMAGES. In such an action it is proper to submit evidence relating to the condition of the patient's health at the time the treatment began, and also to the length of time he was treated by others after defendant ceased to attend him, the jury being cautioned "to compensate plaintiff only for such injury and damage as may have been caused by reason of the negligence of defendant."

3. **Evidence:** NEGLIGENCE: QUESTION FOR JURY. Where there is evidence that under proper treatment the fractured bone should have united within six weeks, and that plaintiff was confined under defendant's treatment for a period of fourteen weeks, most of the time in great pain, it is proper to submit to the jury the question whether the pain and suffering were caused by defendant's negligence, and to authorize a recovery therefor.

4. **Verdict:** REMITTITUR. A verdict in such case for $1,140 upheld, when corrected by a remittitur of an item of interest erroneously allowed between the date of the injury and that of the judgment.

ERROR to the district court for Wayne county: JAMES F. BOYD, DISTRICT JUDGE. *Affirmed on condition that defendant file a remittitur in the sum of $109.20.*

*Guy R. Wilbur* and *F. A. Berry,* for plaintiff in error.

*H. C. Brome* and *A. H. Burnett, contra.*

LOBINGIER, C.

This is an action for malpractice. Plaintiff below was injured by a fall from a horse, resulting in a compound fracture of the tibia and fibula of his right leg about three inches above the ankle; and defendant below, a practicing physician and surgeon, was called to attend plaintiff at his home, where the accident occurred, about four miles from Wayne. The petition alleged that it was defendant's duty to place the fractured portions of the bone in apposition, and by the use of suitable splints and bandages retain and secure them so that they might adhere naturally; that defendant failed to do this, and negligently permitted the bones to overlap; that this negligent treatment was continued for a period of fourteen weeks, during which time plaintiff suffered great pain, and that he was finally compelled to seek other surgical aid, cause himself to be removed to a hospital in Sioux City, and there subject himself to painful and dangerous operations to avoid the effects of defendant's negligence. He further alleged that his injury was permanent, and asked for damages in the sum of $12,500.

The answer admitted the accident and the employment of defendant, but alleged:

"That he gave to the said plaintiff's injury proper, careful and skillful treatment and such treatment as the condition of the injury and the plaintiff would permit him to give. That the operation complained of and the bad results therefrom, were caused by plaintiff's own actions and commands; and not by want of any skill or suitable care on the part of the defendant."

On the trial defendant testified that he "couldn't get the bones in perfect apposition," and informed plaintiff that the bone was not "all right" and would not be un-

less an operation was performed, and that plaintiff said he would not permit an operation. Elsewhere defendant testified that he told plaintiff that "the bone might unite without an operation." Plaintiff, on the other hand, denies this, and testifies that his first knowledge that the bones were not in apposition was obtained after his removal to the hospital in Sioux City. He also relates a colloquy between himself and the defendant as follows: "I said, 'Doctor, I can see that bone move,' and he says: 'Your eyes are fooling you, there is good bony union there.'" Plaintiff is corroborated in his testimony by his mother, who was present when the defendant came to attend her son, and who also denies that defendant stated that the bones were not in perfect apposition, and says that she heard nothing of this until her son was taken to Sioux City. Evidence of competent surgeons was introduced to the effect that the proper permanent dressing for a fracture of this kind would be a plaster of Paris cast to hold the fractured parts in place and secure adhesion. Plaintiff's mother testified that defendant first applied a muslin bandage with a splint whittled out of a piece of board, and that later this was removed and the limb left without a bandage for several days, when a starch bandage was put on.

Certain special findings were submitted by the court. Those relating to the branch of the case just discussed being as follows:

"Did the defendant, at the time he first visited the plaintiff and treated him for the fracture of his leg, inform the plaintiff that he could not put the broken bones in perfect apposition and properly reduce the fracture without an operation to lay bare the bones at the point of the fracture? Answer Yes or No.

"Answer. No.

"Did the plaintiff oppose such an operation to such an extent that it was not performed? Answer Yes or No.

"Answer. No.

"Did the defendant from time to time as he visited the

plaintiff tell him that it might still be necessary to resort to such an operation before a bone union could be obtained and the fracture be properly cured? Answer Yes or No.

"Answer. No.

"Was the treatment of the plaintiff's injury the best. that could have been given him with the facilities at hand, and that the plaintiff would allow and consent to at the time such treatment was given by the defendant? Answer Yes or No.

"Answer. No."

The jury also returned a general verdict for plaintiff in the sum of $1,140.

Plaintiff in error complains of the court's refusal to direct a verdict in his favor. But in view of the testimony just reviewed this was clearly not error. The finding of the jury as to the interrogatories quoted above is not only supported by evidence, but is in accord with what appears to be the weight of the evidence.

It is claimed that the court erred in admitting the deposition of Dr. Reder, a surgeon of St. Louis, who was one of those testifying that, in a case of this kind, "the dressing known as the plaster of Paris dressing is the most preferable one."

It is complained that the evidence of this witness was based on hypothetical questions relating to a simple fracture, and not to a compound fracture such as this is shown to be. It is true that in the first part of his testimony the witness is discussing simple fractures, but when he is asked what the treatment would be in the case of a compound fracture, he says: "It would differ in some respects, but not materially." He later proceeds to explain the treatment of a compound fracture such as has been described in this case. Moreover, we are unable to see that the evidence could have been prejudicial had the witness been speaking of a simple fracture all the time. His evidence was introduced for the purpose of showing that plaintiff in error's treatment was not adequate for an injury of so serious a character, and it could hardly have

prejudiced plaintiff in error had he confined his testimony to injuries less serious and requiring treatment less skillful.

Complaint is also made because the court admitted evidence as to the amount of defendant in error's hospital bill at Sioux City. It would be sufficient to say of this that it is not assigned in the petition in error. Moreover, this evidence was withdrawn from consideration, in determining the amount of damage, by the following instruction:

"If you find for the plaintiff in this case, you will, by your verdict, award plaintiff such damages as are claimed in the petition and you find have been proven by a preponderance of the evidence in this case; plaintiff is not entitled to recover the amount paid for the operation at Sioux City, or his hospital expenses at that place, or any other expense incurred by him, but this evidence and all other evidence relating to plaintiff's condition of health at the time defendant began to treat him, the length of time he was being treated by defendant or others, the pain and suffering, if any, the present condition of his limb; all are matters proper to be considered by you, and to be taken into account by you in making up your verdict in this case, bearing in mind, however, that you are to compensate plaintiff only for such injury and damage as may have been caused by reason of the negligence of defendant, and not charge defendant with any damage that may have been sustained by plaintiff had his injury been properly and skillfully treated."

It is urged, however, that this instruction is erroneous because it still permitted the jury to consider this evidence, though not to award damages thereon. But as we read the instruction it permits the jury to consider the evidence concerning the operation at Sioux City only so far as it relates to "plaintiff's condition of health at the time defendant began to treat him," and we see nothing prejudicial in this. The evidence discloses that defendant in error was in good health at the time the accident occurred and that later, in addition to his injury, he was

afflicted with pneumonia, and that he was treated for this also by plaintiff in error. The latter is certainly in no position to complain because the jurors were allowed to consider evidence which might have afforded a basis for the claim that the patient's removal to the hospital was due to other causes than the unskillful treatment of this injury. On the other hand, the jurors were cautioned against assuming any unproved connection between the injury and the general condition of the patient's health by the admonition to "compensate plaintiff only for such injury and damage as may have been caused by reason of the negligence of defendant." We do not think that this was open to the charge of assuming that negligence was established, especially in view of the fact that the court gave other instructions, at the request of plaintiff in error, that negligence must have been proven by the preponderance of the evidence. Nor do we think the instruction prejudicial because it permitted the jury to take into account the length of time that the patient was treated by others than plaintiff in error. The jury had a right to consider whether and what medical and surgical services on the part of others were made necessary in order to restore the patient to a sound physical condition after the alleged unskillful treatment by plaintiff in error.

Error is also assigned because of the following instruction:

"If you find, from a preponderance of the evidence and the instructions of the court, that the plaintiff is entitled to recover, then in fixing the amount of damages you should take into account the present and future loss of the plaintiff's leg, if any such loss has been proved, as well as compensation for the pain and suffering endured by the plaintiff in consequence of the want of skill, care, and diligence of the defendant, as shown by a preponderance of the evidence, and charged in the petition, if you find from a preponderance of the evidence such loss and suffering was caused by the negligence of the defendant in not properly caring for and treating such injury."

It is claimed that the record contains no evidence as to the "future loss" of defendant in error's limb. But he testified at the trial that his ankle was stiff and sore, and that he was even then unable to work. It is true that the jury afterward found, in response to a special interrogatory, that the stiffness of the ankle was not due to plaintiff in error's treatment. But when the court prepared its instructions it was proper to submit the question of future loss, safeguarded, as it was, by the phrase "if any such loss has been proven."

It is also urged that the instruction is faulty because no evidence was offered showing that the patient endured any special pain or suffering as a result of negligent treatment and beyond what would ordinarily follow from the injury. There was evidence, however, of extreme suffering on the part of defendant in error, and that the proper treatment was not employed. There was also evidence that the union of the fractured bones, where the subject is in previous good health, as defendant in error was shown to have been, should have taken place from the fourth to the sixth week, while here the patient was under plaintiff in error's treatment fourteen weeks, and testifies that he was in great pain until the time he was removed to the hospital. Such being the evidence, we think it was proper to submit to the jury, as was done by the instruction complained of, whether some, at least, of this pain and suffering was not the result of negligent and unskillful treatment, and we think the charge clearly confines the question to such consequent pain and suffering.

It is argued that the evidence discloses contributory negligence on the part of defendant in error in removing the starch bandage, and allowing himself to be carried a long distance to Sioux City in a wagon. This occurred, however, at the close of plaintiff in error's period of treatment, and was fully placed before the jury in an instruction which authorized a verdict for the physician, "unless you find from the evidence that prior to that time plaintiff had sustained injuries by reason of defendant's negligent

treatment of his injuries." As the question was thus fairly submitted, and the jury by its general verdict and the answer to the special interrogatory found that the treatment was negligent, we see no ground for reversal here.

It is finally contended that the verdict is excessive. It is less than one-tenth of the amount sued for, and while, as the jury elsewhere found that the stiffness of the patient's ankle was not caused by plaintiff in error's treatment, the verdict could not have been based on the idea of permanent injury, still, in view of the pain and suffering which defendant in error is shown to have endured and which the jury must have found resulted from negligent and unskillful treatment, we can not say that it is for an amount in excess of what it should have been. It is conceded, however, that the verdict includes an improper allowance of interest, awarded under an erroneous instruction. It is admitted by defendant in error that he is not entitled to interest from the date of injury, December 21, 1899. Interest should have been allowed only from the time when the amount due was fixed by litigation. *Wittenberg v. Mollyneaux*, 59 Neb. 203.

We do not think that this error calls for a reversal of the whole case, but recommend that it be corrected by ordering a remittitur of $109.20 (being the amount of the verdict less a sum which at seven per cent. from December 21, 1899, to May 17, 1901, would produce $1,140), and that as thus corrected the judgment stand affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, unless within thirty days plaintiff below file with the clerk of this court a remittitur of $109.20, in which case the judgment will be affirmed.

AFFIRMED ON CONDITION.